**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE WOMEN'S COALITION, NINA ASSAF; MELISSA HACK BLOSS; MARTA BRYCELAND; CHERYL BULLOCK; LYNN CALCATERRA; ALISHA CLARK; ROSE CONTARIO; CARRIE COSTA; WENDY DREWS; TARA FERRITER; HELEN GARBER; ANDREA GAUL; LYNITA GAYE; NATALIE GIER; BOUCHRA HAMIDI; DANA HANUSZCZAK; PAULA IRACI; ASHA KHEMAI; TONI LEWIS; LISA LIBONATI; MERISSA MCGILL; BARBARA MENEZES; CARMEN MERCADO; JAYE MILLER; SHANNON MULLEN; ALANA ORR; SHARON RUDDY; KRISTINA SANTORO; SALLY SCHULTZ; KIMBERLY SEELMAN; AMY SHAUL; CRYSTAL SHIMMEL; SONJA SPEARMAN; ANTONINA STAMPFL; DIANA SOFIA; JUDY TIENKEN; JEANETTE TRAYLOR; MARINA UMANSKAYA; FRANCINE VERHAGEN; REBECCA VITTORIO; NICOLE WEBER; and JANE DOES 1 through 100, <br><br> Plaintiffs <br><br> -against- <br><br><br> THE STATE OF NEW YORK; THE NEW YORK STATE UNIFIED COURT SYSTEM; NEW YORK FAMILY COURT; NEW YORK SUPREME COURT; KATHY HOCHUL, HON. ROWAN WILSON, AND HON. JOSEPH ZAYAS, in their official capacities, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT AND JURY DEMAND** |

**INTRODUCTION**

1.      This action is instituted for the purpose of addressing the widespread, systemic, and prolific discrimination against women in child custody cases in the New York State Unified Court system.

2.      Through this action, Plaintiffs seek declaratory and injunctive relief.

3.      Plaintiffs and similarly-situated female litigants in the Family Courts and the Matrimonial Divisions of Supreme Courts in the State of New York are victims of a pattern and practice of sex discrimination that results in the unjust reduction or elimination of custody and/or parenting time.

4.      The systemic violations of women's right to equal protection under the law and consequent violations of procedural and substantive due process in custody cases have been continuous for at least several decades, persisting to the present day.

5.      The prevailing doctrine in family law directs judges to rule in the *best interests of the child.*  However, in practice, judges consistently make findings and enter orders that are in men's interests, contrary to the interests of the child.  Judges dismiss and discredit women when they attempt to advocate for what is in their child's best interests.

6.      Primary attachment and caregiving are intended to be highly influential factors in the determination of custody; however, in practice, judges do not give these factors appropriate weight or simply ignore them.  Because mothers are almost always a child's primary bond and caregiver, this minimization and disregard of these factors is discriminatory.

7.      Judges appoint attorneys for the child (AFCs), mediators, evaluators, therapists, parenting coordinators, and others, who typically give opinions and make recommendations that unjustifiably favor men, which are used to support findings and orders that are biased against women.  Research confirms that when there are court-appointees, there is greater gender bias.[1]

8.      Women are threatened with loss of custody and visitation if they do not accept unfair or harmful orders and cease attempting to obtain just and safe outcomes.  Judges find them

---

[1] Meier, J. S. (2020). U.S. Child Custody Outcomes in Cases Involving Parental Alienation and Abuse Allegations: What do the Data Show? *Journal of Social Welfare and Family Law,* 42/1, 92–105.

to be vexatious litigants, prohibit them from filing motions, issue gag orders, find them in contempt, and imprison them if they continue litigating or speaking out about the injustice.

9.    Women become financially devastated in their efforts to maintain custody and protect their children via attorney's fees and other legal costs.  Women miss countless days at work, and often lose jobs and careers.  Inequitable division of marital assets, unfair allocation of legal costs and child support, and freezing of bank accounts further disadvantage women.  Cases are needlessly prolonged, lasting several years, draining women of their money and assets, and sometimes their family's as well.  They are found in contempt and jailed if they cannot pay court-related costs.

10.    A large majority of custody cases involve credible reports and corroborating evidence of spousal and/or child abuse[2] that easily meet the preponderance burden.  However, judges minimize, disregard, or disallow evidence of the abuse and find women to be lying, alienating, mentally ill, and other falsities.  Children continue to be abused, and in extreme cases, murdered.

11.    Discriminatory custody rulings enable men to continue harming women post-separation.  Emotional and financial abuse persist, and women are vulnerable to assault at custody exchanges, peak times for abuse.  "*We recorded instances of abuse* [at exchanges] *in all of the domains we monitored: emotional abuse, physical abuse, physical abuse with injuries, stalking, threats of violence to the mother, death threats to the mother, and threats to others, including the*

---

[2] "Child Protection and Custody Fact Sheet." *National Council of Juvenile and Family Court Judges Resource Center on Domestic Violence*.  https://rcdvcpc.org/facts.html

2

*children…By virtue of being present, children witness abuse that occurs during these exchanges, and this can have harmful health consequences for them.*"[3]

12.     Empirical research[4] has found that when women testify as to spousal abuse, they are discredited 59% of the time, child physical abuse 71% of the time, and child sexual abuse 85% of the time.  When the father alleges alienation (or similar behavior) in response to children's disclosures of sexual abuse, women are discredited 98% of the time, despite that false reports of sexual abuse are extraordinarily rare, even in custody cases.  "[A]*n extensive scholarly literature and thousands of reports from the field suggest that men's violence in the family is often rendered invisible by family court practices*…[F]*amily courts are awarding unfettered access or custody to abusive fathers and increasingly cutting children completely off from their protective mothers. This has been observed especially where mothers allege child sexual abuse*."[5]

13.     A significant number of cases in which gender bias is most pronounced are those that involve children who have disclosed sexual abuse.  Some women choose to go into hiding rather than obey court orders to hand their child over to the perpetrator father.  They are almost always apprehended, indicted for kidnapping, and sentenced to lengthy prison terms.  Judges then grant the father sole custody, which enables him to continue sexually abusing the child, while the court places the mother on supervised visits or denies her any contact for the rest of her child's childhood.

---

[3] Zeoli, A. (2014, November 21). *The child's best interest: Monitoring the presence of abuse in child custody exchanges.* Michigan State University AgBioResearch.

https://www.canr.msu.edu/news/monitoring_the_presence_of_abuse_in_custody_exchanges

[4] Meier, J. S. (2020). U.S. Child Custody Outcomes in Cases Involving Parental Alienation and Abuse Allegations: What do the Data Show? *Journal of Social Welfare and Family Law,* 42/1, 92–105.

[5] Meier, J. S., & Dickson, S. (2017). Mapping Gender: Shedding Empirical Light on Family Courts' Treatment of Cases Involving Abuse and Alienation. *Law & Inequality: A Journal of Theory and Practice, 35*(2), 311–356.

14. Judges frequently find women to be coaching and alienating (or similar behavior) when a child discloses abuse, when, in fact, the children are alienated or resist visiting the father due to his abuse (i.e. not due to *parental* alienation). Conversely, judges enable fathers to alienate children from their mother (i.e. actual *parental* alienation) via court orders of sole custody to the father, supervised visitation or no contact with the mother, and "therapy" (often referred to as "reunification therapy"), in which children are unduly influenced to renounce the mother. So, judges falsely find mothers to be alienating, while enabling fathers to truly alienate children.

15. In court-ordered "therapy" with fathers, unethical therapists use coercive persuasion (brainwashing) techniques to manipulate children into recanting, compartmentalizing, being silent about their father's abuse, and being compliant with court orders to visit or live with him. In contrast, therapy genuinely needed for children who have been deliberately alienated from their mother is rarely, if ever, court ordered.

16. According to a Women's Coalition survey of over 500 mothers submitted in a campaign to the United Nations, a large majority of mothers reported being alienated from their children during and after custody litigation—half of them directly via court orders and half indirectly via fathers being permitted to violate orders.

17. This prevalent alienating of children from mothers is one of the most serious outcomes of custody cases. It causes severe stress and trauma, especially when mothers know their children are being physically, sexually, or seriously emotionally abused. It leads to severe anxiety, major depression, suicidal ideation, and, occasionally, completed suicides. Dr. Julia Goldmark, a New York litigant, recently committed suicide after her ex-husband was granted sole custody and allowed to keep her son from her for over four years. This tragedy is not unique. In

4

addition, children become traumatized by being alienated from their primary attachment figure, which causes impaired development and psychological disorders, such as anxiety and depression.

18.     Forty-one states have conducted investigations of their court systems, with most concluding that gender bias is a significant problem.  A task force launched to investigate gender discrimination in New York courts issued a report[6] that included the following findings:

a. Gender bias against women litigants is a pervasive problem with grave consequences;

b. Women are often denied equal justice, equal treatment, and equal opportunity;

c. Reform depends on the public's resolve to demand a justice system more fully committed to fairness and equality;

d. Custody awards often disregard the father's violence against the mother and underestimate the harm to children associated with abuse of the mother;

e. Mothers are criticized for slight imperfections while a father who simply wants custody is given credit, even if he has done very little parenting;

f. Mothers are at a disadvantage in obtaining custody, even if they have always been the primary caretaker and the father plans to place the children in nursery school or in the care of his second wife;

g. Custody is awarded to fathers because they are in a better financial position;

h. Judges are given virtually unbridled discretion to determine what factors should be considered under the vague best interests standard;

---

[6] *Report of the New York Task Force on Women in the Courts*; Fordham Urban Law Journal (Volume 15, Issue 1, 1986).

i.   Fathers who exhibit minimal or no involvement in parenting are being rewarded with custody, despite the mother having always been the primary caretaker;

j.   Women who have a career are considered less fit to be awarded custody, while a career does not negatively impact fathers getting custody;

k.   The lower post-divorce economic status of women—caused in part by inequitable maintenance, property division, and child support awards—disadvantages the mother;

l.   Women who leave the home to escape domestic violence may be viewed as unstable and less fit to receive custody;

m.  Women are routinely suspected and found to have coached children who report sexual abuse by the father;

n.   Women are considered not credible or less credible than men, and their claims subject to undue skepticism;

o.   Bias against women can be extremely subtle;

p.   Women are subjected to sexist remarks and conduct by judges, lawyers and court personnel.

19.    The Task Force concluded, "*Conduct influenced by gender bias in an institution with profound power over those who come before it can wreak substantial injustice and can undermine the courts' prestige and authority by eroding public confidence in the justice system. It is fitting, therefore, that New York's court system examine and seek to rid itself of any bias.*" These findings remain true today.

20.    The National Organization for Women [NOW], the premier women's rights organization in the U.S., has identified what is happening to women as a *Crisis in Family Courts*.

Due to the seriousness, pervasiveness, and persistence of this form of discrimination against women, NOW has had a branch dedicated to this crisis for over two decades.  Discrimination against women is the only issue to have its own division within the organization.  NOW conducted a thorough investigation into California family courts and issued a report[7] with findings that mirror what is happening in New York and other states. The investigation found:

    a.   Family courts engage in systemic discrimination against women;

    b.   Judges and attorneys, as well as other court employees, including mediators, clerks, and evaluators, engage in sex discrimination;

    c.   Women are routinely denied notice and/or a meaningful hearing;

    d.   The large majority of custody cases involve some type of domestic violence or child abuse perpetrated by the father, which judges minimize or disregard;

    e.   Custody and unsupervised visitation are granted to fathers despite credible evidence, convictions, or findings of violence or abuse;

    f.   Mothers are being placed on supervised visitation or having custody or visitation reduced or eliminated completely, despite there being no credible evidence they are a danger to their children.

21.    NOW concluded, "*The Family Court system in California operates with open discrimination against women in the form of sexist stereotypes, syndromes, and procedures…and presents profound obstacles for women seeking to protect their children from abuse.*"  Twenty-four years later, these findings are still true in courts across the U.S., including in New York.

---

[7] *California National Organization for Women: Family Court Report 2002;* California NOW, Sacramento, CA

22.  Plaintiffs herein are only the tip of the iceberg.  Many women with active custody cases are either too traumatized to participate in this litigation, or they fear retaliation.  Countless female litigants across the state and country are victims of the same institutional harm.

## JURISDICTION AND VENUE

23.  Jurisdiction is provided under 42 U.S. Code, § 1983 and N.Y. Executive Law § 296 as this action seeks to enforce rights guaranteed to Plaintiffs by the U.S. and New York State Constitutions.

24.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) and (b).  All events complained of occurred in New York, and all parties either live or work in New York or were present in New York when they occurred.

## PARTIES

25.  Plaintiff The Women's Coalition is a grassroots, nonprofit organization with the singular mission of raising awareness about, and working to end, the systemic discrimination against women in custody cases.

26.  Individual Plaintiffs are female litigants who have been discriminated against in child custody proceedings in the New York State Unified Court system:

   a.  Plaintiff Nina Assaf is a subject of sex discrimination in the New York Unified Court System, beginning from 2023 to the present day;

   b.  Plaintiff Melissa Hack Bloss was a subject of sex discrimination in the New York Unified Court System from 2014 to 2019;

   c.  Plaintiff Marta Bryceland was a subject of sex discrimination in the New York Unified Court System from 2019 to 2024;

   d.  Plaintiff Cheryl Bullock was a subject of sex discrimination in the New York Unified Court System from 2009 to 2014;

   e.  Plaintiff Lynn Calcaterra was a subject of sex discrimination in the New York Unified Court System from. 2012 to 2019;

f. Plaintiff Alisha Clark is a subject of sex discrimination in the New York Unified Court System, beginning from 2018 to the present day;

g. Plaintiff Rose Contario was a subject of sex discrimination in the New York Unified Court System from 2022 to 2025;

h. Plaintiff Carrie Costa is a subject of sex discrimination in the New York Unified Court System, beginning from 2020 to the present day;

i. Plaintiff Wendy Drews was a subject of sex discrimination in the New York Unified Court System from 2023 to 2025;

j. Plaintiff Tara Ferriter was a subject of sex discrimination in the New York Unified Court System from 2009 to 2022;

k. Plaintiff Helen Garber is a subject of sex discrimination in the New York Unified Court System, beginning from 2023 to the present day;

l. Plaintiff Andrea Gaul is a subject of sex discrimination in the New York Unified Court System, beginning from 2020 to the present day;

m. Plaintiff Lynita Gaye was a subject of sex discrimination in the New York Unified Court System from 2021 to 2025;

n. Plaintiff Natalie Gier is a subject of sex discrimination in the New York Unified Court System, beginning from 2016 to the present day;

o. Plaintiff Bouchra Hamidi is a subject of sex discrimination in the New York Unified Court System, beginning from 2016 to the present day;

p. Plaintiff Dana Hanuszczak was a subject of sex discrimination in the New York Unified Court System from 2011 to 2018;

q. Plaintiff Asha Khemai is a subject of sex discrimination in the New York Unified Court System, beginning from 2025 to the present day;

r. Plaintiff Paula Iraci is a subject of sex discrimination in the New York Unified Court System, beginning from 2020 to the present day;

s. Plaintiff Toni Lewis is a subject of sex discrimination in the New York Unified Court System, beginning from 2022 to the present day;

t. Plaintiff Lisa Libonati is a subject of sex discrimination in the New York Unified Court System, beginning from 2023 to the present day;

u. Plaintiff Merissa McGill is a subject of sex discrimination in the New York Unified Court System, beginning from 2025 to the present day;

v.   Plaintiff Barbara Menezes is a subject of sex discrimination in the New York Unified Court System, beginning from 2024 to the present day;

w.   Plaintiff Carmen Mercado is a subject of sex discrimination in the New York Unified Court System, beginning from 2019 to the present day;

x.   Plaintiff Jaye Miller was a subject of sex discrimination in the New York Unified Court System from 2004 to 2018;

y.   Plaintiff Shannon Mullen is a subject of sex discrimination in the New York Unified Court System, beginning from 2018 to the present day;

z.   Plaintiff Alana Orr is a subject of sex discrimination in the New York Unified Court System, beginning from 2013 to the present day;

aa.  Plaintiff Sharon Ruddy was a subject of sex discrimination in the New York Unified Court System from 1988 to 2000;

bb.  Plaintiff Kristina Santoro was a subject of sex discrimination in the New York Unified Court System from 2015 to 2019;

cc.  Plaintiff Sally Schultz was a subject of sex discrimination in the New York Unified Court System from 2006 to 2012;

dd.  Plaintiff Kimberly Seelman was a subject of sex discrimination in the New York Unified Court System from 2011 to 2023;

ee.  Plaintiff Amy Shaul is a subject of sex discrimination in the New York Unified Court System, beginning from 2024 to the present day;

ff.  Plaintiff Crystal Shimmel is a subject of sex discrimination in the New York Unified Court System, beginning from 2020 to the present day;

gg.  Plaintiff Diana Sofia was a subject of sex discrimination in the New York Unified Court System from 2014 to 2024;

hh.  Plaintiff Sonja Spearman was a subject of sex discrimination in the New York Unified Court System from 2016 to 2022;

ii.  Plaintiff Antonina Stampfl is a subject of sex discrimination in the New York Unified Court System, beginning from 2019 to the present day;

jj.  Plaintiff Judy Tienken was a subject of sex discrimination in the New York Unified Court System from 2004 to 2018;

kk.  Plaintiff Jeanette Traylor was a subject of sex discrimination in the New York Unified Court System from 1994 to 2011;

ll. Plaintiff Marina Umanskaya is a subject of sex discrimination in the New York Unified Court System, beginning from 2017 to the present day;

mm.    Plaintiff Francine VerHagen is a subject of sex discrimination in the New York Unified Court System, beginning from 2022 to the present day;

nn. Plaintiff Rebecca Vittorio is a subject of sex discrimination in the New York Unified Court System beginning from 2018 to the present day;

oo. Plaintiff Nicole Weber was a subject of sex discrimination in the New York Unified Court System from 2022 to 2025.

1.    Jane Does 1 through 100 are yet to be named Plaintiffs who have experienced the same or similar sex discrimination as the Named Plaintiffs.

2.    Defendants are those individuals or entities who are responsible for ensuring litigants are afforded their rights to equal protection and due process in the New York Family and Supreme Court system.  At all relevant times, Defendants acted under color of state law.

## STATEMENT OF FACTS

3.    Judges presiding over child custody cases, in both Family Courts and the Matrimonial Divisions of the Supreme Courts, have engaged in a pattern of conduct that shocks the conscience. Judicial actions and inactions that violate women's right to equal protection and due process include:

a. Adjudicating custody matters in a sex-discriminatory manner by being partial towards men, even when facts and evidence overwhelmingly demonstrate they should not be favored;

b. Denying women a meaningful hearing or allowing only a perfunctory hearing when their fundamental rights and liberty interests are at stake;

c. Granting temporary custody to men pending trial when a nondiscriminatory application of the law would have resulted in temporary custody being granted to women;

11

d.  Appointing attorneys for the children (AFCs) mediators, evaluators, therapists, and parenting coordinators, who demonstrate bias against women and partiality towards men;

e.  Ordering women, but not men, to submit to mental health assessments, based on the same quality and quantity of evidence;

f.  Discrediting women's testimony despite sufficient facts and evidence supporting that their testimony is truthful, but crediting men's assertions and testimony despite sufficient facts and evidence supporting that their testimony is not truthful;

g.  Disregarding or minimizing the important factors of primary bond and primary caregiving, which has the effect of disadvantaging mothers and favoring fathers;

h.  Making findings that women are mentally ill, lying, neglectful, or unfit when there are insufficient facts to prove it by the preponderance burden; and not making findings that men are mentally ill, lying, neglectful, or unfit when there are sufficient facts to prove women's testimony by the preponderance burden;

i.  Making findings that there is insufficient evidence to support women's allegations that the father is seriously abusive when it clearly meets the preponderance burden; yet making findings that there is sufficient evidence to support men's allegations the mother is seriously abusive when it clearly does not meet the preponderance burden;

j.  Making findings that the mother is alienating the children from the father (or similar behavior) when there are insufficient facts and evidence; but not making findings that the father is alienating the children from the mother (or similar behavior) when there are sufficient facts and evidence;

12

k.  Ordering therapy for children when they are justifiably alienated from the father due to his abuse or neglect, which is used to control and silence them; and not ordering therapy for children when they have been coercively alienated from the mother by the father;

l.  Ordering supervised parenting time or no-contact for mothers when there is insufficient evidence that they present a danger to their children; but not ordering supervised parenting time or no-contact with fathers when there is sufficient evidence they are a danger to their children;

m. Selectively enforcing visitation with fathers but not mothers. Courts disproportionately threaten or punish mothers (with contempt or jail) when they do not or cannot force their children to go to an abusive father; but not doing the same for men;

n.  Issuing gag orders and sealing records when it favors men and disfavors and silences women, based on the same quantity and quality of evidence;

o.  Holding women in contempt and jailing them when they exercise their First Amendment right to speak about the injustices in their cases; and not holding men in contempt or jailing them for speaking about their cases;

p.  Threatening women, but not men, with loss of custody, visitation, or contact with their children, if they object to the Court's position, or do not accept the Court's false findings against them and fail to admit guilt.

q.  Threatening women, but not men, with loss of custody, visitation, or contact with their children, if they continue to file motions, and prohibiting women from filing motions for an extended period of time (using gatekeeping orders, or otherwise).

13

4. The above instances, along with others, constitute a pattern of systematic and methodical due process violations directed against women, *because they are women*. These constitutional infringements are enabled by court policies, procedures, and customs and result in the entitlement of men and oppression of women.

5. This sex-based discrimination is occurring at the individual, institutional, and structural levels, to the great detriment of Plaintiffs and similarly-situated female litigants, as individuals and society as a whole. The epidemic numbers of victims signify a profound crisis.

6. In addition to constitutional rights, women are entitled to the rights enumerated in the United Nations Declaration of Human Rights, which the U.S. has adopted, and in the *International Covenant on Civil and Political Rights,* which the U.S. has ratified. They require State parties to provide their citizens equal protection of the laws, fair and public hearings by an impartial tribunal (due process), and an effective remedy if violated.

7. Piecemeal reforms over the last few decades within the Family Courts and Matrimonial Divisions of Supreme Courts have not made any significant difference, as they do not address the root of the problem: systemic sex discrimination.

8. Appellate courts do not provide an effective remedy. Cases are reviewed under the highest *abuse of discretion* standard; the appellate process takes months or years causing irreparable harm to women's fundamental rights; more women cannot afford the high cost of appellate proceedings compared to men; and even successful appeals are generally remanded to the trial court, with virtually the same biased outcome.

9. The systemic discrimination against women in child custody cases in New York Family and Matrimonial Divisions of the Supreme Courts undermines public confidence in the

14

entire judicial system and breeds contempt for the rule of law. This Court must recognize and enjoin it.

## CAUSES OF ACTION

### COUNT ONE
### EQUAL PROTECTION - N.Y. CONST. ART. 1; § 11
(All Plaintiffs, against all Defendants)

10.    Plaintiffs herein reallege and incorporate by reference the foregoing averments.

11.    Defendants are responsible for the pattern and practice of discriminatory actions and inactions that have deprived Plaintiffs and similarly-situated female litigants of the Equal Protection of the laws in violation of Article 1, Section 11 of the New York Constitution. Plaintiffs demand strict scrutiny review by this court. Under strict scrutiny, Defendants cannot demonstrate a compelling state interest in having the Family and Supreme Courts discriminate against women, nor can Defendants establish that such discrimination is narrowly tailored to serve a compelling interest, nor that discriminating against women is the least restrictive means of achieving any compelling state interest.

12.    Defendants' pattern and practice of sex discrimination has been prolific and widespread in the New York Family and Supreme Court systems and is ongoing.

13.    Plaintiffs and similarly-situated female litigants are harmed thereby.

### COUNT TWO
### PROCEDURAL DUE PROCESS - N.Y. CONST. ART. 1; § 6
(All Plaintiffs, against all Defendants)

14.    Plaintiffs herein reallege and incorporate by reference the foregoing averments.

15.    Defendants are responsible for the pattern and practice of discriminatory actions and inactions that have deprived Plaintiffs and similarly-situated female litigants of their

15

fundamental rights and liberty interests without procedural due process in violation of Article 1, Section 6 of the New York Constitution.

16.     Plaintiffs and similarly situated female litigants are harmed thereby.

**COUNT THREE**
**SUBSTANTIVE DUE PROCESS - N.Y. CONST. ART. 1; § 6**
(All Plaintiffs, against all Defendants)

17.     Plaintiffs herein reallege and incorporate by reference the foregoing averments.

18.     Defendants are responsible for the pattern and practice of discriminatory actions and inactions that have deprived Plaintiffs and similarly situated female litigants of their fundamental rights and liberty interests without substantive due process in violation of Article 1, Section 6 of the New York Constitution.

19.     Plaintiffs and similarly situated female litigants are harmed thereby.

**COUNT FOUR**
**EQUAL PROTECTION - U.S. CONST. 14th AMENDMENT**
(All Plaintiffs, against all Defendants)

20.     Plaintiffs herein reallege and incorporate by reference the foregoing averments.

21.     Defendants are responsible for the pattern and practice of discriminatory actions and inactions that have deprived Plaintiffs and similarly situated female litigants of the equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The Equal Protection Clause applies to "persons." Women are persons. Any disparate or unequal treatment of women by any judge or in any court, including unequal treatment by the application of intermediate scrutiny by this court, is a denial of Equal Protection. Hence, Plaintiffs demand strict scrutiny review of the Family Courts' pattern and practice of discriminating against women. Under strict scrutiny, Defendants cannot demonstrate a compelling state interest in having the New York Family and Supreme Courts discriminate against

16

women, nor can Defendants establish that such discrimination is narrowly tailored to serve a compelling interest, nor that discriminating against women is the least restrictive means of achieving any compelling state interest.

22.     Plaintiffs and similarly situated female litigants are harmed thereby.

## COUNT FIVE
## PROCEDURAL DUE PROCESS - U.S. CONST. 14th AMENDMENT
(All Plaintiffs, against all Defendants)

23.     Plaintiffs herein reallege and incorporate by reference the foregoing averments.

24.     Defendants are responsible for the pattern and practice of discriminatory actions and inactions actions and inactions that have deprived Plaintiffs and similarly situated female litigants of their fundamental rights and liberty interests without procedural due process in violation of the Procedural Due Process clause of the Fourteenth Amendment to the United States Constitution.

25.     Plaintiffs and similarly situated female litigants are harmed thereby.

## COUNT SIX
## SUBSTANTIVE DUE PROCESS - U.S. CONST. 14th AMENDMENT
(All Plaintiffs, against all Defendants)

26.     Plaintiffs herein reallege and incorporate by reference the foregoing averments.

27.     Defendants are responsible for the pattern and practice of discriminatory actions and inactions that have deprived Plaintiffs and similarly situated female litigants of their fundamental rights and liberty interests without substantive due process in violation of the Substantive Due Process clause of the Fourteenth Amendment to the United States Constitution.

28.     Plaintiffs and similarly situated female litigants are harmed thereby.

17

**PRAYER FOR RELIEF**

29.     **WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and grant appropriate declaratory and injunctive relief based on the jury's findings, including the following:

a.  Declare that defendants have discriminated against one or more plaintiffs on the basis of their sex.

b.  Declare that the defendants have violated one or more plaintiffs' Equal Protection rights.

c.  Declare that defendants have violated one or more plaintiffs' Due Process rights.

d.  Order defendants to stop violating plaintiffs' Equal Protection and Due Process rights;

e.  Grant plaintiffs with minor children the right to initiate de novo proceedings, in which their rights to equal protection and due process will be upheld; and

f.  Grant such other and further relief as this Court deems just and proper.

**JURY DEMAND**

30.     Plaintiffs demand trial by jury in this action.

Dated: May 19, 2026
         New York, New York

Respectfully Submitted,

*/s/ Sarah Howland*
**Sarah Howland, Esq.**
**HLO., P.C.**
60-89 Myrtle Avenue, Ste. 2
Ridgewood, New York 11385
(718) 456-9823 / (718) 456-1845
SHowland@HLONY.com
*Attorney for Plaintiffs*

18